**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 19, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DANIEL S. PRIETO,

Defendant-Appellant.

No. 16-1333
(D.C. Nos. 1:15-CV-00993-RBJ and
1:12-CR-00503-RBJ-2)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLMES**, and **BACHARACH**, Circuit Judges.

Defendant-Appellant Daniel Prieto was convicted of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and was sentenced to one hundred months' imprisonment. Mr. Prieto moved the district court to vacate his sentence under 28 U.S.C. § 2255, arguing that the enhancement of his sentence under 18 U.S.C. § 924(e)(2)(B) was unconstitutional in light of *Johnson v. United States*, --- U.S. ----, 135 S. Ct. 2551

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(2015), and that he received ineffective assistance of counsel at trial. The district court granted Mr. Prieto's motion in part as to the *Johnson* claim, and reduced his sentence to seventy months, but denied his motion as to the ineffective-assistance claims.

Mr. Prieto requests a certificate of appealability ("COA") from this court for review of two of his ineffective-assistance claims. Having carefully considered his requests under the framework of *Slack v. McDaniel*, we conclude that Mr. Prieto has made a "substantial showing of the denial of a constitutional right," and that the issues raised on appeal are "adequate to deserve encouragement to proceed further." 529 U.S. 473, 483–84 (2000) (first quoting 28 U.S.C. § 2253(c), then quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Therefore, we summarily **grant** Mr. Prieto's application for a COA. But, exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the district court's judgment on the grounds that Mr. Prieto has failed to show prejudice arising from counsel's alleged errors.

# I

On August 3, 2012, a police officer in Greeley, Colorado pulled over a car that Mr. Prieto was driving; loud music was emanating from the car and the officer intended to issue a citation for violation of a noise ordinance. Mr. Prieto had not stopped the car right away, raising the officer's suspicions. When the officer approached the car, he observed a glass pipe in the center console that he

2

believed had been used for the consumption of methamphetamine and noted that Mr. Prieto's eyes were bloodshot and his speech was slurred.

A second officer arrived at the scene, responding to the first officer's call, and asked Mr. Prieto's passenger to get out of the vehicle while the first officer's dog conducted an exterior drug sniff. As soon as the passenger's side door opened, the second officer observed a black, semiautomatic handgun between the passenger's seat and the frame of the vehicle. The first officer drew his weapon, pointed it at Mr. Prieto, and twice ordered him to put his hands on the steering wheel. Mr. Prieto "began to slide his hands down the steering wheel" before he complied with the officer's command. Aplt.'s App., Vol. II, at 244 (Trial Tr., dated Mar. 11–12, 2013 & May 13, 2013).

When the officers removed Mr. Prieto from the vehicle, the first officer "immediately observed a silver-in-color firearm on the floorboard of the . . . [driver's] side[,] . . . directly below the steering wheel[,] in front of the gas and brake pedals." *Id.* at 245, 247. The magazine of the gun was loaded, and there was a bullet in the chamber. Mr. Prieto was arrested, and police secured the two guns and searched the vehicle.

Shortly after Mr. Prieto's arrest, his mother, Mercedes Prieto, arrived at the scene and learned that her son and his passenger had been arrested as felons in possession of firearms. Ms. Prieto quickly claimed that she owned both guns, but, a few minutes later, told officers that she owned only the gun found on the

3

driver's side.

Mr. Prieto was charged with being a felon in possession of a firearm and ammunition, in violation of §§ 922(g)(1) and 924(a)(2). The only issue contested at trial was whether Mr. Prieto knowingly possessed the firearm found beneath his seat.

An arresting officer testified that Mr. Prieto initially refused to comply with the instruction to place his hands on the steering wheel, and that Mr. Prieto began to slide his hands downwards, suggesting knowledge of a gun on the floor of the car. The government also introduced audio clips from phone calls made by Mr. Prieto from jail, in which he admitted that the gun was "in plain view" of the officers. *See* Aplee.'s App., Vol. VIII (Ex. 6, Tr. of Audio Recording). Other physical objects found in the car—a glass pipe, beer, cigarettes, mail, and children's CDs—suggested that Mr. Prieto was the primary driver of the car.

Ms. Prieto was the only witness called by the defense. On cross-examination and rebuttal, the government elicited (1) that she had changed her story at the scene of the arrest, initially claiming to own both guns but then claiming to own only one; (2) that she had lied to federal agents; (3) that she was mistaken about the color of the gun found on the driver's side of the car; (4) that she was mistaken about the caliber of the gun found on the passenger's side of the car; (5) that she claimed to be the primary driver of the car, but none of the items found in the car were hers; (6) that she and the sister of Mr. Prieto's passenger

4

harmonized stories about purchasing the guns; and (7) that, specifically, she told the sister of Mr. Prieto's passenger that she would "stick to the story no matter what." Aplt.'s App., Vol. II, at 537.

Before us, Mr. Prieto argues that he was prevented from testifying at trial regarding his ignorance of the gun because the district court advised him, under *People v. Curtis*, 681 P.2d 504 (Colo. 1984), that his prior felony convictions could be used to impeach him if he chose to testify ("*Curtis* advisement"). Mr. Prieto understood the court to mean that all nine of his prior convictions could be used, and the district court subsequently acknowledged that such an understanding would have been reasonable. Further, the court found (and the government concedes) that the *Curtis* advisement was incorrect and over-broad, because only five or six of Mr. Prieto's prior convictions would have been admissible for impeachment purposes under Federal Rule of Evidence 609. However, Mr. Prieto's trial counsel failed to object to the *Curtis* advisement.

Mr. Prieto claims that, but for counsel's failure to object to the incorrect *Curtis* advisement, he would have testified that he was unaware of the gun beneath the seat. More specifically, he would have testified that he adjusted the driver's seat backwards after he entered the car because Ms. Prieto, who is fourteen inches shorter, had last driven it, but that he did not notice the gun that was revealed when he took this action. Mr. Prieto discussed introducing photographs with trial counsel to show the position of the seat before and after he

5

moved it and to demonstrate that the gun could have been concealed.

Mr. Prieto was convicted by the jury, and the court subsequently sentenced him to one hundred months in prison. His conviction and sentence were affirmed on direct appeal. *United States v. Prieto*, 565 F. App'x 758, 764 (10th Cir. 2014) (unpublished).

Mr. Prieto filed a pro se motion under § 2255 on May 11, 2015, claiming ineffective assistance of counsel. Mr. Prieto then filed a supplemental motion, with the assistance of new counsel, on June 20, 2016, seeking relief from a sentencing enhancement under the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), that was held unconstitutionally vague by *Johnson*, 135 S. Ct. 2551.

Mr. Prieto claimed that his trial counsel was ineffective for failing to object to the court's over-broad *Curtis* advisement and for not reviewing incriminating jailhouse calls introduced at trial.

The district court held a hearing on Mr. Prieto's § 2255 motion and granted relief on his *Johnson* claim, reducing his sentence from one hundred months to seventy months. The court, however, denied Mr. Prieto's ineffective-assistance claims. Applying *Strickland v. Washington*, 466 U.S. 668 (1984), the district court found that Mr. Prieto had not suffered prejudice from either alleged deficiency of representation.

The district court found that Mr. Prieto's testimony during the § 2255

6

hearing—that he would have testified at trial, but for the faulty *Curtis* instruction—lacked credibility, in part because (1) he was responding to leading questions, (2) five or six of his nine prior convictions *could* have been used to impeach him, and (3) trial counsel—though present at the § 2255 hearing—did not testify (i.e, attest under oath) regarding Mr. Prieto's desire to testify at trial. The district court further found that, even if Mr. Prieto had testified in his own defense, a different outcome was "extremely unlikely" given the weight of the evidence against him.   Aplt.'s App., Vol. III, at 38–39 (Tr. of Hr'g on Mot. to Vacate under 28 U.S.C. § 2255, dated Aug. 8, 2016).  In this latter regard, the court found that Mr. Prieto failed to meet his burden of showing a reasonable probability of a different outcome had counsel objected to the faulty *Curtis* advisement.

Furthermore, as to the alleged error related to counsel's failure to review the jailhouse calls, the court ruled that Mr. Prieto's claim was time-barred, as it was raised for the first time in the June 20, 2016 supplemental motion.  The court further found, in the alternative, that Mr. Prieto failed to show prejudice because he offered no grounds for the court to believe that the calls would not have been admitted into evidence, nor did he provide details to support his claim that he could have mounted a more robust defense if counsel had reviewed the calls.

Mr. Prieto timely filed a notice of appeal from the district court's judgment.

## II

"In reviewing denial of a § 2255 motion for post-conviction relief where a COA has been granted, 'we review the district court's findings of fact for clear error and its conclusions of law de novo.'" *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (quoting *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011)). "Claims of ineffective assistance of counsel are mixed questions of law and fact, reviewed de novo." *Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999).

To succeed on an ineffective-assistance claim, a defendant "must prove deficient performance and prejudice . . . . To prove prejudice, [the defendant] must show 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 741 (10th Cir. 2016) (quoting *Strickland*, 466 U.S. at 694), *cert. denied sub nom. Ryder v. Royal*, --- U.S. ----, 137 S. Ct. 498 (2016).

## III

Mr. Prieto argues, on appeal, that the district court erred in deciding that his testimony at the § 2255 hearing—that he would have testified at trial had counsel objected to the faulty *Curtis* advisement—was not credible. He further argues that the district court erred in finding that he suffered no prejudice from

8

the two alleged errors of trial counsel. Finally, he challenges the trial court's finding that his claim arising from counsel's failure to review the jailhouse calls was time-barred.

We agree with the district court that Mr. Prieto has failed to show prejudice arising from either of counsel's alleged deficiencies. We need not reach any of Mr. Prieto's other arguments to properly resolve this case; therefore, we do not do so. *See United States v. Pam*, 867 F.3d 1191, 1201 n.9 (10th Cir. 2017).

**A**

The district court found no prejudice arising from counsel's failure to object to the faulty *Curtis* advisement because, *first*, Mr. Prieto's testimony at the § 2255 hearing—that he would have testified at trial—lacked credibility, and, *second*, even if he had testified, the weight of the evidence was such that there was no reasonable probability of a different outcome. The parties dispute the propriety of the first of these findings.

However, we need not decide the propriety of the district court's finding that Mr. Prieto's testimony at the §2255 hearing lacked credibility. The district court correctly found in any event that Mr. Prieto's trial testimony would not have raised a reasonable probability of a different result. That finding provides a sufficient basis for us to affirm.

Mr. Prieto claims he would have testified that he "did not know the gun was in the vehicle," and that he discussed with counsel introducing pictures of

9

"where the [car] seat would be when [Mr. Prieto's] mother was sitting in the vehicle" compared to "where it would be when [he was] sitting in the seat" in order to show that the gun could have been concealed at the time he sat down. Aplt.'s App., Vol. III, at 13–14.

However, even assuming that Mr. Prieto would have so testified, we conclude that there is not a reasonable probability that the result of this proceeding would have been different. As explicated *supra*, the government presented very cogent and powerful evidence of Mr. Prieto's guilt.[1] Furthermore, the government could have introduced five or six of his past convictions to

---

[1]    In his argument to the contrary, Mr. Prieto relies heavily on the Fourth Circuit's decision in *United States v. Blue*, 957 F.2d 106 (4th Cir. 1992). However, *Blue* is patently distinguishable. There, the Fourth Circuit found insufficient evidence to support the defendant's conviction, under § 922(g)(1), on a constructive-possession theory, where a gun was found concealed beneath the passenger's seat of a car in which the defendant was the passenger. 957 F.2d at 106. Beyond the gun's position, the only evidence offered by the government to show that the defendant was aware of the gun was the fact—contested by the defendant—that the defendant's "shoulder dipped" towards the floorboard of the car when an officer approached. *Id.* at 107–08. The court held that this "[fell] outside, *but just barely*, the realm of the quantum of evidence necessary to support a finding of constructive possession." *Id.* at 108 (emphasis added). Here, by contrast, the gun was not concealed, and the officer's testimony that Mr. Prieto's hands slid down the steering wheel was not contested. Furthermore, the Fourth Circuit underscored in *Blue* that the nexus between the defendant—a passenger—and the car containing the gun was extremely weak, stating: "The car in which the gun was found did not belong to Blue; in fact, no evidence indicated that Blue had ever been in that car before." *Id.* On the other hand, Mr. Prieto was the driver of the car where the gun was found (not a passenger), and the government's evidence indicated that he was likely the primary driver. In light of the foregoing distinctions, we believe that Mr. Prieto's reliance on *Blue* is misplaced.

10

impeach and discredit him. And, notably, Mr. Prieto's defense rested heavily on his mother's testimony that she owned the gun and had placed it in the car; yet, Ms. Prieto's credibility was resoundingly challenged on cross examination. Ms. Prieto changed her story at the scene of the arrest, lied to federal agents, and coordinated her testimony with the sister of the man arrested with Mr. Prieto. Ms. Prieto's claim of ownership of the gun was further discredited by her inaccurate description of the gun's color.

We conclude that Mr. Prieto has not shown a reasonable probability that counsel's objection to the faulty *Curtis* advisement would have produced a different result, even if it ultimately would have resulted in the jury hearing Mr. Prieto's testimony.

**B**

We also conclude that Mr. Prieto has not shown a reasonable probability that counsel's review of the incriminating jailhouse calls would have led to a different outcome. More specifically, he has made absolutely no showing that the court would have deemed the calls inadmissible or otherwise kept them from the jury if his trial counsel had reviewed them. Mr. Prieto does argue that counsel could have "diminish[ed] the impact" of the audio clips introduced at trial by introducing "witnesses who could provide context or an alternative interpretation," Aplt.'s Opening Br. at 42, but Mr. Prieto does not identify these witnesses or explain what favorable testimony they could have offered. Mr.

11

Prieto's claim that effective counsel could have diminished the impact of the jailhouse calls, therefore, relies upon speculation. Accordingly, we agree with the district court's finding that Mr. Prieto failed to meet his burden of showing prejudice arising from counsel's allegedly deficient performance.

## IV

Based on the foregoing, we **AFFIRM** the judgment of the district court.


ENTERED FOR THE COURT


JEROME A. HOLMES
Circuit Judge